IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE L. MAINOR ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 7540 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| BANKFINANCIAL F.S.B., a corporation, ) | |
| and LAURA SHALLOW, individually and ) | |
| as Vice President, Bank Financial F.S.B. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Michelle Mainor ("Mainor" or "Plaintiff") filed a complaint in this Court on October 24, 2003, alleging, inter alia, that BankFinancial F.S.B. ("BankFinancial" or "Defendant") violated the Family and Medical Leave Act ("FMLA") when it denied her request for a leave of absence.[1] Currently before this Court is BankFinancial's motion for summary judgment. For the reasons stated below, this motion is GRANTED. This case is CLOSED. Any pending motion are MOOT and TERMINATED.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

---

[1]Plaintiff also filed suit against Laura Shallow, which this Court dismissed on January 6, 2004. That day this Court also dismissed all counts of Plaintiff's complaint except the FMLA count.

R. Civ. P. 56(c); *Kamler v. H/N Telecommunication Services, Inc.,* 305 F.3d 672, 677 (7th Cir. 2002). A genuine issue of material fact exists for trial when a reasonable jury could return a verdict for the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

When determining whether a genuine issue of material fact exists, the Court considers the evidence and all proper inferences therefrom in the light most favorable to the non-moving party. *See Neuma, Inc. v. AMP, Inc.* 259 F.3d 864, 871 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion. *See Albiero v. City of Kankakee*, 246 F.3d at 932. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250.

**Factual and Procedural Background[2]**

The key events in this case took place over the span of four days. On Wednesday, October 24, 2001, Plaintiff, a BankFinancial employee, met with her supervisor Laura Shallow

---

[2]Unless otherwise noted, the following undisputed facts are taken from the Parties' Local Rule 56.1 materials. Statements submitted by the Parties that do not comply with this Court's Standing Order Regarding Summary Judgment are disregarded.

and BankFinancial vice president of human resources Patty Smith.  During the meeting, Shallow gave Plaintiff a warning report regarding Plaintiff's performance on the job.

The next day, Thursday, October 25, 2001, Plaintiff met with Norinne Pulec, BankFinancial's executive vice president of human resources.  During the meeting, Plaintiff requested leave under the FMLA so that she could accompany her mother on a visit to her sick grandmother.  Plaintiff did not give any other reason for why she was requesting leave.  Pulec advised Plaintiff that she could not take a leave of absence under the FMLA to visit her grandmother, but she could take a personal leave of absence.  Both parties agree that the conversation "was very limited" and was not "extensive." Later that day, after speaking with Pulec, Plaintiff submitted a resignation letter stating that her last day of work would be November 9, 2001.

On Friday, October 26, 2001, when Shallow learned of Plaintiff's resignation, she decided to make the resignation effective immediately.  That night, Plaintiff went to the emergency room because she felt dizzy and nauseous.  A doctor diagnosed her with hypertension.[3]

On Saturday, October 27, 2001, Plaintiff told Shallow and Smith that she could not come in to work because she had been in the hospital the previous evening.  Shallow in turn advised Plaintiff that BankFinancial had accepted Plaintiff's letter of resignation, effective immediately,

---

[3]In the months prior to her October visit to the emergency room, Plaintiff had visited a health care provider approximately every other month.  She never received a formal diagnosis regarding her health during those visits: according to her uncontested deposition testimony, the doctor talked to her about stress and told her to exercise and eat more healthy foods.

and that she would pay Plaintiff two weeks salary without requiring her to work for the pay. Plaintiff was paid for two weeks of work.

Plaintiff first filed suit in this Court on October 24, 2003. This Court dismissed all counts of the complaint except Count I, the FMLA count, on January 6, 2004. Defendant filed a motion to dismiss Count I on August 13, 2004.

**Analysis**

Count I of Plaintiff's Complaint alleges that Defendant violated the FMLA when it denied her requests for a leave of absence. As a preliminary matter, this Court notes that the only request for leave that could possibly give raise to a valid claim occurred on October 25, 2001 when Plaintiff was still employed by Defendant. For reasons unclear to this Court, Plaintiff persists in arguing that she was entitled to leave that she requested after her resignation became effective: such an argument is without merit.[4]

As for the request on October 25, 2001, Defendant contends it did not entitle Plaintiff to leave under the FMLA for two distinct reasons. First, Defendant argues that Plaintiff did not

---

[4]Plaintiff persists in arguing that the "central material fact at issue" is "whether defendant violated the FMLA when defendant was told by plaintiff that she needed medical leave on October 27, 2001, because of an unpredictable serious medical condition which required emergency room treatment in the late hours of October 26, 2001." Much of Plaintiff's briefing focuses on the period after October 25, 2001, the date she submitted her resignation letter.

The FMLA applies to current employees, not former employees who have voluntarily chosen to resign. Yet Plaintiff persists in arguing that after submitting her resignation, she should still have been considered an employee and eligible for leave under the FMLA. Plaintiff does not offer adequate legal support for the proposition that employers are required to provide leave to employees who have voluntarily and with no undue interference decided to resign from employment. The plain language in the employee handbook stating that employees must tender their resignations two weeks prior to the final date of employment does not necessarily indicate, as Plaintiff argues, that Defendant is required to wait two weeks prior to the final date in order to accept the resignation. Nor does Plaintiff offer adequate factual support for the proposition that her resignation was not voluntary and informed.

suffer from a serious health condition prior to her resignation such that she was eligible for leave under the FMLA. Second, Defendant argues that even if Plaintiff did suffer from a serious health condition such that she was eligible for leave under the FMLA, she did not provide requisite notice of her condition to her employer and therefore was not entitled to leave under the FMLA.

*Did Plaintiff Suffer from a Serious Health Condition?*

Congress passed the FMLA and the President signed it into law in 1993; the "goal was not to supplant employer-established sick leave and personal leave policies, but to provide leave for more uncommon and, presumably, time-consuming events such as having or adopting a child or suffering from what is termed a 'serious health condition.'" *See Price v. City of Fort Wayne*, 117 F.3d 1022, 1023 (7th Cir. 1997).

At issue in this case is whether Plaintiff suffered from a serious health condition. Under the FMLA, a "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves–(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. §2611 (11). The inpatient care prong is irrelevant in this case, as Plaintiff has submitted no evidence that prior to her resignation she received inpatient care. Instead, this Court must determine whether Plaintiff received continuing treatment by a health care provider such that she was treated for a serious health condition under the FMLA prior to her resignation.

Department of Labor regulations provide some guidance as to what qualifies as a serious health condition involving continuing care. *See* 29 C.F.R. §825.114(a)(2). One example of a serious health condition involving continuing care is a "chronic serious health condition" that involves a period of incapacity or treatment of such incapacity: Plaintiff claims this example

applies to her. *See* 29 C.F.R. §825.114(a)(2)(B)(iii). According to Department of Labor regulations, a chronic serious health condition is one which requires periodic visits for treatment, continues over an extended period of time, and may cause episodic rather than a continuing period of incapacity. *See* 29 C.F.R. §825.114(a)(2)(B)(iii). Furthermore, when dealing with a chronic serious health condition, regulations state that "[t]reatment does not include routine physical examinations" and "drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider is not, by itself, sufficient to constitute a regime of continuing treatment for purposes of FMLA leave." 29 C.F.R. §825.114(b).

At best, Plaintiff's deposition testimony states that she made a few visits to a physician for "checkups" in the months prior to her resignation and subsequent emergency room admission. During those visits, she talked to her doctor about stress management. She was never formally diagnosed during those visits, nor does it appear that any doctor was in search of a diagnosis for Plaintiff's state of health. Plaintiff was not prescribed any medication, and instead was advised that she should exercise and improve her eating habits. Without more specific evidence from Plaintiff rebutting Defendant's argument that she did not have a chronic health condition covered by the FMLA, Plaintiff's situation seems precisely the type addressed by the Department of Labor regulations as failing to qualify as a chronic serious health condition. Based on her own deposition testimony, Plaintiff does not satisfy the requirements from a chronic serious health condition under the FMLA.

Plaintiff attempts to avoid a conclusion that summary judgment is appropriate by positing that the inquiry of whether her medical condition qualified as a serious health condition is "inappropriate for summary judgment." In support, Plaintiff cites *Price v. City of Fort Wayne*,

117 F.3d 1022, 1024-1025 (7th Cir. 1997). In *Price*, the Court of Appeals concluded that Price had submitted enough evidence to withstand summary judgment on the issue of whether she had a serious health condition. *See id.* at 1025. She submitted an affidavit from her doctor swearing that she came into his office in "alarming condition," that she "was on the edge of a break-down, both physically and mentally," and that "to attempt to continue to work in her condition would be seriously detrimental to her health." *See id.* This information was unrebutted by appropriate medical testimony. In this case, not only has Plaintiff failed to present no such evidence from others, even her own testimony does not provide sufficient factual information to indicate that she satisfies the requirements for a chronic serious health condition.

Perhaps Plaintiff does possess adequate evidence proving that she had a chronic serious health condition prior to her resignation; if so, she has kept it a secret from this Court. The Seventh Circuit was confronted with a similar evidentiary problem in *Haefling v. United Parcel Service, Inc.* when analyzing an FMLA claim under interim regulations. *See Haefling v. United Parcel Service, Inc.* 169 F.3d 494 (7th Cir. 1999). In *Haefling*, the Seventh Circuit had to determine whether the Plaintiff suffered from a serious health condition, thereby surviving a motion for summary judgment. The Seventh Circuit determined that the evidence in the record fell short of satisfying the definition of a serious health condition when the plaintiff "did not submit an affidavit from his own doctor or any other medical personnel demonstrating the necessity of the "treatments" he supposedly received..." and the plaintiff's "own self-serving assertions regarding the severity of his medical condition and the treatment it required [were]

insufficient to raise an issue of fact on this point." *Id.* at 500.[5] The Court of Appeals then concluded that the "complete dearth of evidence submitted by [plaintiff] on this issue compels the conclusion that [plaintiff] is incapable of establishing that he suffered from a 'serious health condition'..." *Id.* at 500-501.

As in *Haefling*, there is a dearth of evidence in this case. Plaintiff has not submitted any affidavits from medical personnel. Instead, she has requested that this Court determine the severity of her medical condition and the treatment required by looking at her deposition testimony. Moreover, even based on her own testimony, Plaintiff fails as a matter of law to state a medical condition that qualifies for coverage under the FMLA. This Court cannot simply assume that somewhere there exists factual information supporting the proposition that Plaintiff was covered by the FMLA when she requested leave on October 25, 2001. While it certainly is hypothetically possible for such information to exist, it is Plaintiff's responsibility–in her opposition to summary judgment, where she must do more than raise a "metaphysical doubt" as to the material facts–to present it to this Court. She has failed to do so. The testimony that she

---

[5]This Court is not interpreting Seventh Circuit case law to hold that all self-serving assertions are incapable of raising an issue of material fact sufficient to prevent summary judgment. The Seventh Circuit's decision in *Payne v. Pauley*, for example, indicates otherwise. *See Payne v. Pauley*, 337 F.3d 767, 773 ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment– including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial– a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts."). In this case, the self-serving affidavit is insufficient because it fails to present sufficient evidence of a material dispute related to Plaintiff's serious health condition. Her testimony, when viewed in the light most favorable to her, simply does not support the legal proposition that she suffers from a chronic serious health condition.

has presented merely indicates that her experiences prior to her resignation are insufficient to constitute continuing medical treatment under the FMLA.

*Did Plaintiff provide BankFinancial with Sufficient Notice?*

Defendant also correctly notes that based on the evidence before this Court, Plaintiff does not appear to have given Defendant adequate notice that she was eligible for FMLA leave. The Seventh Circuit has noted: "Although workers need not expressly assert rights under the FMLA...employers are still entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work." *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir.) (citations omitted). In *Collins*, the Seventh Circuit determined that Plaintiff had not given adequate notice as required by the FMLA when she told her employer that she was "sick" in order to explain her absence but did not further indicate that she had a serious health condition.

In this case, Plaintiff has submitted *no* evidence indicating that she told her employer that she was suffering from a serious health condition prior to her resignation; instead, she asked for leave to visit her grandmother. Plaintiff does not argue that she presented Shallow, Pulec or anyone else at BankFinancial with specific information regarding her medical status prior to October 26, 2001: instead, she seems to be arguing that Pulec, based on personal observation, knew or should have known that Plaintiff suffered from a serious health condition.

In support, Plaintiff refers to Pulec's testimony. This Court fails to see how the referenced testimony supports Plaintiff's argument. At best, Pulec's deposition testimony can support the argument that Pulec noticed a change in Plaintiff's demeanor after Shallow became supervisor. Pulec stated in her deposition that Plaintiff was "not as vibrant as she had been. She

was more quiet. Her tone, she toned down. She was a little frustrated." A simple change in demeanor–especially one as apparently insignificant as Plaintiff's "toning down"–is not enough to put Defendant on notice that Plaintiff suffered from a serious health condition covered by the FMLA; the fact that Plaintiff requested leave for a reason distinctly unrelated to a serious health condition is similarly unhelpful.

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. This case is CLOSED. All outstanding motions are MOOT and TERMINATED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **3/8/05**